UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


LEANNE PRATER,

        Plaintiff,

   v.                                     Case No. 2:13-cv-549
                                          JUDGE SMITH
                                          Magistrate Judge Kemp

LUCKY YOU, INC.,

        Defendant.


## OPINION AND ORDER

This matter is before the Court on Defendant Lucky You, Inc.'s Motion for Summary Judgment (Doc. 16). Plaintiff Leanne Prater filed a Response in Opposition (Doc. 20) to which Lucky You replied (Doc. 12). The issues before the Court are fully briefed and ripe for review. For the reasons that follow, Lucky You's motion is **GRANTED**.

                I.        FACTUAL BACKGROUND

Plaintiffs' claims center on an alleged incident of sexual harassment suffered by Plaintiff at her workplace and the subsequent retaliatory action allegedly taken by her employer for reporting the problem.

In May 2010, Plaintiff began working as an "attendant" at Lucky You, a gaming facility located in Jeffersonville, Ohio. (*See* Doc. 16, Ex. 3, Talmadge Long Aff. at ¶¶ 2-3). At that time, Lucky You owner Talmadge Long, his son Dean Long, and his wife Lillie Long all served as managers, overseeing the daily operations of the business. (*Id*. at ¶ 2). According to Plaintiff, she was a good employee and often went above and beyond what was expected of her. (*See* Doc.

13, Prater Depo. at 65[1]). Up until a few days prior to her termination, Plaintiff enjoyed working at Lucky You "a lot" and would often stay after her shift to play the machines on her own time. (*Id*. at 58, 112). According to her managers, Plaintiff's first year of employment went well: she worked hard and was liked by the customers. (*See* Talmadge Long Aff. at ¶ 3; Doc. 16, Ex. 2, Lillie Long Aff. at ¶ 3). Over time, however, they state that her work performance suffered as she "became argumentative and confrontational with coworkers" and brought "drama" and "her personal problems" to work. (*Id*.; Doc. 16, Ex. 1, Dean Long Aff. at ¶ 3).

During her two years of employment at Lucky You, Plaintiff received two formal write-ups. In November 2011, Plaintiff was written up for failing to fill out proper paperwork. (*See* Doc. 13, Ex. G, 2011 Write Up). In February 2012, Plaintiff was written up for being late to a mandatory employee meeting. (*See* Doc. 13, Ex. H, 2012 Write Up). Also, although not formally designated a "write-up," manager Lillie Long placed a note in Plaintiff's employee file on November 26, 2011 that stated: "Due to the amount of complaints from coworkers, Leanne's schedule has been changed until further notice. Leanne is bringing her personal life to work which is effecting [sic] her work performance. Leanne is also taking her personal life out on coworkers." (Doc. 16, Ex. 1, Note). Manager Lillie Long also testified that there had been "repeated performance coaching" of Plaintiff following coworker conflicts and complaints, but that none of those sessions were ever formally documented. (Lillie Long Depo. at 52).

The focus of Plaintiff's claims is a five-day span of work-related incidents in June 2012 which culminated in her termination. On May 31, 2012, Plaintiff worked her normal shift at Luck You from 4:00 p.m. to midnight. (Prater Depo. at 107). After her shift ended, Plaintiff went home, changed clothes, talked to her boyfriend, and then returned to Lucky You around 2:30 in the morning. (*Id*. at 107, 114). When she arrived at Lucky You, she rang the buzzer to

---

[1] All deposition pinpoint citations refer to ECF pagination, not the page numbers of the actual transcript.

gain entrance into the facility.[2] (*Id*. at 114-15). Despite repeatedly ringing the buzzer, no one admitted Plaintiff into the building. (*Id*. at 115). Finally, after four or five minutes, a patron opened the door and let Plaintiff into Lucky You. (*Id*.). At that time, the patron complained to Plaintiff that she was there to play not let people in, and that she had been letting people in all night. (*Id*.). Plaintiff realized that Ben Merritt, the Lucky You employee working at the time, was running the vacuum and playing the radio loudly, which precluded him from hearing the buzzer and answering the door himself. (*Id*.) After reassuring the patron that she would remedy the situation, Plaintiff went to the front office and turned down the radio. (*Id*.). She then began to play the machines. (*Id*.).

When Mr. Merritt realized the radio was no longer playing, he approached Plaintiff to ask her about why she had turned off the music. This is where the stories conflict. According to Mr. Merritt, the following occurred:

> I went over and asked Leanne, and I said, did you have the radio off. And she said, yeah, and she was real hateful with me. She said, I couldn't freaking hear. She said, I rang and rang and rang the bell. And I said, no, you never, Jeff said he let you right in. She just went off. She said, what is your F-ing problem. I said, I don't have a problem, Leanne. And she just went on and on and on and on. And I just put my hand up like, stop. I said, I'm going to have a talk with Lillie. And that made her mad, and she called me a cry baby and stuff like that. And I turned around and was walking away, and I said, if you wasn't out acting like a prostitute, you wouldn't be back there ringing the bell at 3:00 in the morning. And that's all I said.

(*See* Doc. 15, Merritt Depo. at 19).

Plaintiff recited a different encounter:

> [Ben] asked me why in the fuck did I turn the radio off. And I told him, I said, Ben, in a really calm -- Ben, look, man, Joyce came and opened up the door. She's complaining, you know, and I'm basically telling him I'm trying to look out for him, I don't want him to get in trouble. . . .

---

[2] Apparently, Lucky You locks its doors after midnight. To enter the facility after that time, all patrons must ring a buzzer at the front door and be admitted by a Lucky You employee.

3

> And then he said -- I just looked at him, and I said, Ben. . . I'm trying to get you not to get in trouble. And he said, fuck you, bitch. And I -- and he said – that's when he started telling me that -- fuck you, bitch, suck my dick. You're nothing but a prostitute. You suck different men's dicks in the parking lot for money to come in here and play.
>
> And I said, Ben, no, you didn't. He goes, oh, yes, I did. And he said -- I said, you need to lower your voice, Ben, because everybody in this place can hear what you're saying to me right now. And he said, I don't give you a fuck, you think I need this job, I can find a job anywhere. And I said, Ben, I'm going to call Lillie and tell her what's been going on.
>
> He told me to call Lillie, he didn't give a damn. And he said, and how much do you charge out in the parking lot. And I ignored him when he said that. And I was trying not to cry. He was hurting my feelings really bad.
>
> . . . .
>
> [A]fter – I told him I was going to call Lillie, and he bowed up like he was fixing to charge me, and fixing to knock my head off, and he started – I said, what are you going to do that for, what is a girl possibly going to do. I'm saying it like that. And then he didn't say anything else after that.

(Prater Depo. at 116-17, 122).

Shortly after the confrontation, Plaintiff left Lucky You. She immediately called one of her managers, Lillie Long, and told her about the argument with Mr. Merritt. (*Id*. at 139-41). Lillie told Plaintiff that she "did the right thing" by calling her and letting her know what happened and that she would "handle it in the morning." (*Id*. at 142).

The following day Lillie spoke with Talmadge about the alleged argument over the phone. (Doc. 20, Ex. 1, Lillie Long Depo. at 32). Talmadge told Lillie to interview Plaintiff and Mr. Merritt separately to get both sides of the story. (*Id*. at 33). On June 2nd, Plaintiff and Mr. Merritt reported to Lucky You for their shifts. Lillie met first with Plaintiff and then with Mr. Merritt to discuss the incident. (*Id*. at 32). According to Lillie, both employees' stories were "pretty much the same besides who started it." (*Id*.). At that time, Lillie did not make any decision about terminating either Mr. Merritt or Plaintiff's employment; instead, she placed a

4

note in each of their files indicating that "they had a confrontation in the front lobby." (*Id*. at 48). After the meetings were over, Lillie assigned Plaintiff and Mr. Merritt to opposite sides of the facility to finish their shifts in an attempt to avoid conflict. (Doc. 16, Ex. 2, Lillie Long Aff. at ¶ 10).

Plaintiff was alarmed that Mr. Merritt was still employed with Lucky You and that no action appeared to have been taken. She approached manager Dean Long and asked "what was up with that" and "what [Ben] was doing here." (Prater Depo. at 150). Here, the stories again conflict. According to Plaintiff, she discussed the incident with a co-worker during her shift, but never used any foul language or said anything bad about Mr. Merritt that day. (*Id*. at 162). According to manager Dean Long, Plaintiff "caused a scene in front of coworkers" during her shift on June 2nd, repeatedly referring to Mr. Merritt as a liar and a "mother fucker," and complaining about management's handling of the incident. (Doc. 16, Ex. 1, Dean Long Aff. at ¶¶ 4-5). This, Dean alleges, prompted a phone call to owner Talmadge Long, who, after hearing about Plaintiff's disruptive behavior during her shift, instructed Dean to write a termination letter and sign it on his behalf. (*Id*. at ¶ 5).

On June 4th, Plaintiff reported to Lucky You to pick up her paycheck. At that time, Dean Long handed her a termination letter. (Prater Depo. at 164). The letter stated the following with regard to the reasons underlying her termination:

> This letter confirms your immediate dismissal from the Lucky You Company for behavior and performance which has created an adverse and argumentative work environment among management, co-workers, and customers. . . .
>
> You are dismissed because, despite repeated feedback and performance coaching, this behavior has not improved. On several occasions, you were asked to refocus your behavior and conversations away from your disruptive personal issues and more towards improved performance and customer service, however; we have not benefitted from any of these performance coaching conversations. On the contrary, this continued behavior has caused an unhealthy working environment.

5

(Doc. 13, Ex. I, Termination Letter).  After receiving the termination letter, Plaintiff did not engage in any further discussions with Lucky You managers Talmadge, Dean, or Lillie Long. (*See* Prater Depo. at 167).

## II.     STANDARD OF REVIEW

Lucky You brings this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment.  *Id*. at 249-50.

A party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  Alternatively, the moving party can "merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Cox*, 53 F.3d at 150 (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*. However, a nonmoving party cannot rely solely on this favorable construction; he or she must present affirmative evidence showing more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cox*, 53 F.3d at 150 ("[T]he nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment.").

### III. DISCUSSION

Plaintiff has asserted claims of sexual harassment/hostile work environment and retaliation in violation of Title VII and the Ohio Civil Rights Act. Lucky You asserts that it is entitled to summary judgment on all counts. The Court will first address Plaintiff's sexual harassment/hostile work environment claims and then turn to her retaliation causes of action.

**A.     Plaintiff's Sexual Harassment/Hostile Work Environment Claims**

As an initial matter, the Court notes that in Ohio, the elements and legal standards for evaluating sexual harassment/hostile work environment claims are the same under both federal and state law. *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 828 (6th Cir. 2000). Therefore, the Court will consider Plaintiffs' Title VII and Ohio Civil Rights Act sexual harassment/hostile work environment claims together.

For Plaintiff to prevail on her hostile work environment claims based on sexual harassment by a coworker, she must establish the following elements:

7

1. She was a member of a protected class;

2. She was subjected to unwelcome harassment;

3. The harassment complained of was based upon sex;

4. The harassment unreasonably interfered with her work performance or created a hostile or offensive work environment that was severe and pervasive; and

5. Lucky You knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999). Lucky You does not dispute that Plaintiff was a member of a protected class or that she was subjected to unwelcome harassment. Rather, Lucky You asserts it is entitled to summary judgment on Plaintiff's sexual harassment/hostile work environment claim because she "cannot establish the third, fourth, or fifth elements." (Doc. 16, Mot. Summ. J. at 8). The Court will address each of the contested elements in turn.

**1. The Harassment Complained of Was Based upon Sex.**

Lucky You asserts Mr. Merritt's statements to Plaintiff were not based on the fact that Plaintiff was a female, but that she was sexually promiscuous. Plaintiff contends that the insults and epithets Mr. Merritt used were gender-specific and directed at her because she was female.

To establish that the harassment was "based on her sex," Plaintiff must show that "but for the fact of her sex, she would not have been the object of harassment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). Courts have found that "sexual epithets, offensive, explicit references to women's bodies and sexual conduct" and "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" meet this standard. *Greenwood v. Delphi Auto. Sys., Inc.*, 257 F. Supp. 2d 1047, 1059 (S.D. Ohio 2003) *aff'd sub nom.*

8

*Greenwood v. Delphi Auto. Sys., Inc.*, 103 F. App'x 609 (6th Cir. 2004); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). However, "[t]o be actionable, harassment must constitute more than words that have sexual content or connotations": the harassment must expose members of the protected class (here, women) to disadvantageous terms or conditions of employment to which others are not exposed. *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004). Accordingly, while vulgar language and general name-calling often will not meet the "based on sex" requirement, language that is "sex-specific"—especially language that is "explicitly sexual and patently degrading of women"—will. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 271 (6th Cir. 2009); *Kendel v. Local 17AUnited Food &, Commercial Workers*, 748 F. Supp. 2d 732, 739 (N.D. Ohio 2010).

Construing all factual allegations in Plaintiff's favor as the Court is required to do in evaluating Lucky You's motion, Mr. Merritt said the following to Plaintiff:

"Fuck you, bitch, suck my dick."

"You're nothing but a prostitute."

"You suck different men's dicks in the parking lot for money to come in here and play."

"How much do you charge out in the parking lot[?]"

(Prater Depo. at 117). Mr. Merritt's statements were directed at Plaintiff, contained gender-specific epithets, and were explicitly sexual and offensive. Accordingly, the Court finds these statements are sufficient evidence to create at least a material issue of fact as to whether Plaintiff experienced harassment "based on sex." *See Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 271 (6th Cir. 2009) (finding a triable issue of fact existed as to whether harassment was "based on sex" when names such as "bitches," "whores," and "sluts" were used in the workplace); *Smith v. Meyer Builders*, No. C-1-03-729, 2006 WL 543706, at *1 (S.D. Ohio Mar.

9

3, 2006) (genuine issue of material fact existed as to whether harassment which consisted of statements such as "suck my dick" and "fuck you" satisfied the "based on sex" prong).

The Court next turns to whether Plaintiff has set forth sufficient evidence regarding the fourth element of her sexual harassment/hostile work environment claim, i.e., whether Mr. Merritt's harassment was severe and pervasive or otherwise unreasonably interfered with her work performance at Lucky You.

### 2. The Harassment Did Not Unreasonably Interfere with Plaintiff's Work Performance or Create a Severe and Pervasive Hostile Work Environment.

For Plaintiff's claims to survive summary judgment, she must not only set forth sufficient evidence demonstrating that the harassment was "based on sex," she must also demonstrate that a genuine issue of material fact exists as to whether the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).  In considering the severity or pervasiveness of the alleged harassment, the Court must evaluate the totality of the circumstances through two lenses: an objective one (whether a reasonable person would find the workplace hostile or abusive) and a subjective one (whether Plaintiff in fact did find it so). *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).  Examples of the circumstances a court may consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In support of her argument that Lucky You fostered a long-standing hostile work environment, Plaintiff cites to her incident with Mr. Merritt as well as other stories relayed to her by customers and co-workers about their experiences at Lucky You.  Lucky You asserts that Mr.

10

Merritt's alleged harassment of Plaintiff was short-lived and isolated, and that any other third-party stories are unsupported hearsay that cannot form the basis of Plaintiff's claim.  Lucky You also argues that Plaintiff voluntarily returned to Lucky You after her shifts, spending much of her off-the-clock free time there.  This, Lucky You contends, undercuts Plaintiff's assertions that Lucky You fostered a severe, pervasive, and hostile environment.

      The Court finds Plaintiff has not provided sufficient evidence indicating that the harassment she experienced either unreasonably interfered with her work or created a severe and pervasive hostile work environment.  The Court first considers the third-party stories recounted by Plaintiff in her deposition and memorandum and finds them to be unsupported and unsworn hearsay statements (regarding incidents Plaintiff did not herself experience).  Further, even if these stories qualified as competent evidence, Plaintiff's own testimony and actions demonstrate that these reported incidents did not affect her work environment. Prior to the June 1, 2012 incident with Ben Merritt, Plaintiff testified she was treated fairly and enjoyed working at Lucky You "a lot."  (*See* Prater Depo. at 84-85, 59).  Moreover, during her tenure at Lucky You, Plaintiff voluntarily and frequently returned to Lucky You in her free time to socialize and play the machines. (*Id*. at 112).  This is not behavior indicative of someone seeking to escape from a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Williams*, 187 F.3d at 560 (characterizing a hostile work environment as one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment").

      The Court is then left to consider whether Plaintiff's argument with co-worker Ben Merritt was severe and pervasive enough to transform Lucky You into a hostile work environment.  After considering the factors set forth above, the Court finds this isolated incident

with Mr. Merritt was not, in and of itself, sufficient to create a hostile work environment. As stated above, frequency of the harassment is an important factor to the Court's analysis: the word "pervasive" itself indicates that "rare" or "isolated" incidents of harassment seldom rise to the level required to create a hostile work environment. *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1001-02 (S.D. Ohio 2002); *Faragher*, 524 U.S. at 787 ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). Here, the argument between Mr. Merritt and Plaintiff lasted for a total of four minutes; the two had never argued previously and did not have any direct interaction with one another after June 1, 2012. (Prater Depo. at 121-123). Further, while the Court does not condone the crass words allegedly spoken by Mr. Merritt nor downplay how they must have hurt Plaintiff's feelings, the issue here is not whether Mr. Merritt's actions were distasteful or offensive: the question here is whether Mr. Merritt's insults were "sufficiently severe or pervasive to alter the conditions of [Plaintiff]'s employment and create an abusive working environment." *Williams*, 187 F.3d at 560. Plaintiff worked only one shift between the incident that forms the basis of her claim and her termination. During that shift, she testified that her co-workers "were quiet" towards her, that she was upset that Mr. Merritt had not been fired, and that she cried at the front counter for a brief period of time. (*See* Prater Depo. at 168, 156). But the Court finds that quiet co-workers and the presence of Mr. Merritt on the opposite side of the facility—although not ideal—did not create a work environment that was hostile or abusive. Further, in her deposition, Plaintiff testified that "nothing happened" during her June 2 shift, that she did not interact with Mr. Merritt at all and that "[i]t was a normal day." (*Id*. at 155). Thus, by her own admission, Plaintiff's working conditions during her final shift were not significantly altered by the encounter with Mr. Merritt.

12

For these reasons, the Court finds Plaintiff has not set forth sufficient evidence to demonstrate that the alleged harassment unreasonably interfered with her work performance or created a severe and pervasive hostile work environment.  As Plaintiff is required to set forth sufficient evidence as to each and every element to survive Lucky You's summary judgment motion, the Court could end its analysis here.  However, in the interest of completeness, the Court will address the last element of Plaintiff's sexual harassment/hostile work environment claim as well.

### 3. Lucky You Took Prompt and Appropriate Corrective Action.

As set forth above, Plaintiff has not provided sufficient evidence demonstrating that a triable issue of fact remains as to the fourth element of her sexual harassment/hostile work environment claim.  Additionally, for the reasons that follow, the Court finds she has not met her burden as to the fifth element, i.e., that Lucky You failed to take prompt and appropriate corrective action in response to the complained of harassment.

An employer cannot be held vicariously liable for coworker harassment; rather, "an employer's liability in instances of coworker harassment is based on its response to the reported sexual harassment: an employer is liable if it does not respond in a 'reasonable' manner." *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 747 (6th Cir. 2008).  Thus, for an employer to be liable for coworker harassment in the context of a sexual harassment/hostile work environment claim, a plaintiff must show the employer's response "manifest[ed] indifference or unreasonableness in light of the facts the employer knew or should have known." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829 (6th Cir. 1999).

Plaintiff argues that Lucky You acted unreasonably in (1) failing to initiate any investigation of the June 1st altercation and (2) allowing Mr. Merritt and Plaintiff to work

13

together on June 2nd. Lucky You contends that it acted reasonably: manager Lillie Long investigated the matter to the extent necessary and separated Plaintiff and Mr. Merritt to ensure they did not interact with one another at work.

The Court finds Lucky You's response to Plaintiff's complaint reasonable. Following Plaintiff's 3 a.m. phone call on June 1, 2012, Manager Lillie Long discussed the matter with owner Talmadge Long and decided to personally address the situation with Plaintiff and Mr. Merritt during their next scheduled shift. (Lillie Long Depo. at 32). Accordingly, as soon as Plaintiff reported to work on June 2nd, Lillie called her into the office to discuss the incident. (*Id*. at 33). Shortly thereafter, in a separate meeting, Lillie confronted Mr. Merritt about the argument to make sure she got "both sides of the story." (*Id*. at 32). Lillie did not find it necessary to investigate any further or question any other witnesses because "their stories were pretty much the same besides who started it." (*Id*.). According to Lucky You, who initiated the argument was irrelevant because *both* employees were going to be written up for "failing to show mutual respect to coworkers and for causing a scene in front of customers." (*Id*. at 54; *see also* Doc. 16, Ex. B, Lillie Long Aff. at ¶¶ 7-8). Further, Lillie did not make a brash decision to terminate either employee at that time. Instead, Lillie allowed Plaintiff and Mr. Merritt to continue working, albeit on "completely opposite" sides of the facility:

> Q. Now, after this, after Leanne and Ben got into their argument, did you make any attempt to separate the two of them from working together?
> A. They didn't have a schedule together besides that Saturday, and I had them on completely different sides of the building. I believe I had her working on the desk and I believe I had him working on the floor writing bonuses on that particular day.
> Q. Okay. So they were on -- they were in the building together that day but on -- you know, doing -- doing different things essentially?
> A. Completely opposite of each other, yes.

(Lillie Long Depo. at 39-40).

14

The Court finds that these actions were not unreasonable. Lucky You managers were faced with a he-said-she-said situation. Manager Lillie Long followed up with each employee separately shortly after the incident. Lillie considered "both sides of the story" and chose not to terminate either employee. She did, however, find both Plaintiff and Mr. Merritt partially at fault for disrespecting each other and causing a scene in front of Lucky You's customers, and consequently put notes in both employees' files. Further, after their meetings, Lillie assigned Mr. Merritt and Plaintiff to different tasks on opposite sides of the facility to ensure that neither employee interacted with one another during their shared shift.

The standard here is not whether Lucky You utilized the best possible business practices. The standard is whether Lucky You was indifferent or unreasonable in responding to the facts it knew or should have known. For all of the reasons set forth above, the Court finds it was not.

Plaintiff has failed to set forth sufficient evidence showing that a genuine issue for trial remains as to the fourth and fifth elements of her sexual harassment/hostile work environment claims. The Court therefore finds Lucky You is entitled to judgment as a matter of law on Counts One (Title VII) and Three (Ohio Civil Rights Act) of Plaintiff's Complaint.

**B.     Plaintiff's Retaliation Claims**

Plaintiff has also brought claims under Title VII and the Ohio Civil Rights Act for retaliation. Plaintiff asserts that she was fired from Lucky You in retaliation for reporting Mr. Merritt's sexual harassment to management. Lucky You argues that (1) Plaintiff did not engage in "protected activity"; (2) even if she did, Lucky You was not aware of it; and (3) regardless, Lucky You had a legally sufficient reason for terminating Plaintiff.

### 1. General Standards

The standards for evaluating both of Plaintiff's retaliation claims are governed by federal law. *See Courtney v. Landair Transp., Inc.*, 227 F.3d 559, 565 (6th Cir. 2000). To make a *prima facie* case of Title VII retaliation, Plaintiff must prove: (1) she engaged in activity protected by Title VII; (2) Lucky You knew about this exercise of protected rights; (3) Lucky You took adverse employment action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir. 2002). Once Plaintiff has established a *prima facie* case of retaliation, the burden shifts to Lucky You to articulate "some legitimate, nondiscriminatory reason for its actions." *Id*. at 553. If Lucky You so provides this legitimate reason, the burden of production shifts back to Plaintiff who must ultimately show that any reason proffered by Lucky You was merely pretext. *Id*.

For purposes of its motion, Lucky You does not dispute that Plaintiff has set forth sufficient evidence to satisfy the third and fourth elements of Plaintiff's retaliation claims. Instead, Lucky You argues that Plaintiff's retaliation claims fail "because she cannot establish the first or second elements, and because Lucky You identified a legitimate, nondiscriminatory reason for her termination." (Doc. 16, Mot. Summ. J. at 15). The Court will focus its analysis accordingly.

### 2. Application

Plaintiff bases her retaliation claim on the "opposition clause" of Section § 2000e–3(a) which states, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter. . . .

42 U.S.C. § 2000e–3(a).  Importantly, "a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful" as long as the opposition was based on "a reasonable and good faith belief that the practices were unlawful." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989).  ("A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful."). Accordingly, to determine whether Plaintiff engaged in an activity protected by Title VII, the Court must determine whether Plaintiff possessed a reasonable and good faith belief that the June 1, 2012 incident with Mr. Merritt qualified as a Title VII sexual harassment/hostile work environment violation.

As set forth in detail above in Section A.2., to be actionable under Title VII, a hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Williams*, 187 F.3d at 560 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).  Thus, Plaintiff had to have had a reasonable, good faith belief that she was opposing conduct that rose to this level.  The Court finds she did not.  The harassment Plaintiff complained of was isolated, lasted approximately four minutes, and occurred not while she was on the clock, but after she had voluntarily returned to Lucky You to socialize and play the machines. (*See* Prater Depo. at 114-124).  Further, when Plaintiff spoke to manager Lillie Long that night on the phone, Plaintiff did not use the words "harassment" or "discrimination"; instead, Plaintiff testified that she "didn't know" why Mr. Merritt had verbally accosted her, and surmised that maybe he had just had a "bad day."[3]  (Lillie Long Depo. at 36;

---

[3] While the Court acknowledges that using legal jargon is not required to trigger protection under the statute, the Court finds Plaintiff's state of mind relevant to considering whether she believed, in good faith, that she was

Prater Depo. at 121). Also, Plaintiff testified that up until the days preceding her termination, Lucky You had treated her fairly and was an enjoyable place to work. (*Id*. at 84-85, 59). The Court finds that these uncontested facts indicate that Plaintiff did not subjectively, in good faith, believe that she was submitting a complaint based on discrimination and a "workplace permeated with discriminatory intimidation, ridicule, and insult." Further, even if Plaintiff subjectively believed, at the time, that she was engaging in a protected activity, the Court finds this belief to be unreasonable in light of the aforementioned circumstances and the brief and isolated nature of the reported incident.

The Court thus finds that Plaintiff has failed to set forth sufficient evidence demonstrating that she engaged in a protected activity. Further, it necessarily follows that Lucky You could not have known about activity that never took place. Therefore, Plaintiff has failed to set forth sufficient evidence demonstrating that a genuine issue for trial remains as to the first two elements of her retaliation claims.

Because Plaintiff has not established a *prima facie* case of retaliation, the Court need not proceed with the second and third steps of the burden-shifting analysis set forth above. For all of these reasons, the Court finds that Lucky You is entitled to summary judgment on Plaintiff's retaliation claims, specifically Counts II (Title VII) and IV (Ohio Civil Rights Act) of Plaintiff's Complaint.

## IV. CONCLUSION

For reasons set forth above, the Court finds Lucky You is entitled to summary judgment on all of Plaintiff's claims. Accordingly, the Court **GRANTS** Defendant Lucky You, Inc.'s Motion for Summary Judgment.

---

engaging in protected activity—and not just reporting an argument with a disgruntled coworker for overstepping his job duties.

The Clerk shall **REMOVE** Document 16 from the Court's pending motions list.

The Clerk shall **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

     */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**